**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>and<br><br>STEADFAST INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>FOUR G CONSTRUCTION, INC D/B/A GEEDING CONSTRUCTION INC.,<br><br>**Hold Service:** C T Corporation System<br>5661 Telegraph Rd., Ste. 4B<br>Saint Louis, Missouri 63129<br><br>and<br><br>BUCKEYE PARTNERS, L.P.,<br><br>**Hold Service:** Cogency Global Inc.<br>850 New Burton Rd., Ste. 201,<br>Dover, Delaware, 19904<br><br>Defendants. | ) | Case No. |

**COMPLAINT FOR DECLARATORY JUDGMENT**

COME NOW Plaintiffs Zurich American Insurance Company ("Zurich"), American Guarantee and Liability Insurance Company ("AGLIC"), and Steadfast Insurance ("Steadfast"), by and through the undersigned counsel, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, and for their Complaint for Declaratory Judgment, hereby state as follows:

**PARTIES, JURISDICTION, VENUE**

1. Plaintiff Zurich American Insurance Company ("Zurich") is an insurance company incorporated, organized, and existing under the laws of the State of New York with its principal place of business in the State of Illinois. As such, Zurich is a corporate citizen of the State of New York and Illinois.

2. Plaintiff American Guarantee and Liability Insurance Company ("AGLIC") is an insurance company incorporated, organized, and existing under the laws of the State of New York with its principal place of business in the State of Illinois. As such, AGLIC is a corporate citizen of the State of New York and Illinois.

3. Plaintiff Steadfast Insurance Company ("Steadfast") is an insurance company incorporated, organized, and existing under the laws of the State of Illinois with its principal place of business in the State of Illinois. As such, Steadfast is a corporate citizen of the State of Illinois.

4. Defendant Four G Construction, Inc. d/b/a Geeding Construction Inc. ("Geeding") is a corporation formed under the laws of the State of Missouri, with its principal place of business in the State of Missouri. As such, Geeding is a corporate citizen of the State of Missouri. Service upon Geeding may be effectuated upon its registered agent C T Corporation System at 5661 Telegraph Rd., Ste. 4B, Saint Louis, Missouri 63129-4275.

5. Defendant Buckeye Partners, L.P. ("Buckeye") is a limited partnership formed under the laws of the State of Delaware, with its principal place of business in the State of Texas. The members who own Buckeye are residents and citizens of the State of Delaware. As such, Buckeye is a citizen of the State of Delaware. Service upon Geeding may be effectuated upon its registered agent Cogency Global Inc. at 850 New Burton Rd., Ste. 201, Dover, Delaware, 19904.

6. Jurisdiction is proper with this Court pursuant to 28 U.S.C. § 2201 because Plaintiffs are seeking a determination of its rights and obligations under multiple policies of insurance issued by the Plaintiff companies to Geeding. Jurisdiction is proper with this Court pursuant to 28 U.S.C. § 1332(a) because the parties are of diverse citizenship and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs. The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, as coverage is sought under multiple Zurich commercial general liability or excess policies, for an interim arbitration award entered against Geeding and in Buckeye's favor in the amount of $19,191,355.80. This case involves only Zurich's alleged indemnity obligation owed for the interim arbitration award.

7. This Court has personal jurisdiction over all Defendants as they are either citizens of the State of Missouri and/or have sufficient contacts with the State of Missouri.

8. Venue is proper in the Eastern District of Missouri under 28 U.S.C. § 1391(b) because all defendants are, for the purpose of venue, residents of the State of Missouri. All Defendants may be deemed residents of the state of Missouri for the purpose of venue, as they are all subject to personal jurisdiction with respect to this action by this Court because they are either incorporated in the State of Missouri or have sufficient contacts with the forum. Divisional venue is proper in the Eastern Division of this Court pursuant to Local Rule 2.07 because both Defendants Geeding and Buckeye may be deemed residents of the Eastern District of Missouri.

## GENERAL ALLEGATIONS

9. Plaintiffs bring this action seeking interpretation of twenty policies of insurance issued to Geeding, as well as a declaration of its rights and obligations thereunder.

**<u>The Commercial General Liability "CGL" Policies</u>**

10. Steadfast issued to named insured Four G Construction, Inc. a commercial general liability policy bearing the Policy No. BOG-5945983-00, with effective dates of December 31, 2008 to December 31, 2009. Policy No. BOG-5945983-00 was renewed one time the following annual period, with that policy period being effective December 31, 2009 to December 31, 2010 and with Policy Number BOG-5945983-01.

11. Zurich American Insurance Company ("Zurich") first issued to named insured Four G Construction, Inc. d/b/a Geeding Construction a commercial general liability policy bearing the Policy No. GLO-5945983-02, with effective dates of December 31, 2010 to December 31, 2011. Policy No. GLO-5945983-02 was renewed one time the following annual period, with that policy period being effective December 31, 2011 to December 31, 2012 and with Policy Number GLO5945983-03.

12. Zurich thereafter issued to named insured Four G Construction, Inc. d/b/a Geeding Construction a commercial general liability policy bearing the Policy No. GLO-1040244-00, with effective dates from December 1, 2014, to March 1, 2015. Policy No. GLO-1040244-00 was renewed twelve times between March 2015 and March 2026 as Policy No. GLO-1040244-01 through Policy No. GLO-1040244-12.

**<u>The Excess Policies</u>**

13. Steadfast issued to named insured Four G Construction, Inc. a commercial umbrella liability policy bearing the Policy No. UMB-5945991-00, with effective dates of December 31, 2008 to December 31, 2009. Policy No. UMB-5945991-00 was renewed twice by Steadfast the following two annual periods, with Policy Number UMB-5945991-01 being effective

December 31, 2009 to December 31, 2010 and Policy Number UMB-5945991-02 being effective December 31, 2010 to December 31, 2011.

14. Thereafter, Policy No. UMB-5945991-02 was renewed by AGLIC as Policy No. UMB-5945991-03, with effective dates of December 31, 2011 to December 31, 2012.

15. Thereafter, Policy No. UMB-5945991-03 was renewed by AGLIC as Policy No. AUC-5945991-04, with effective dates of December 31, 2012 to December 31, 2013. Policy No.AUC-5945991-04 was renewed by AGLIC the following annual period as Policy No. AUC-5945991-05, with that policy period being effective December 31, 2013 to December 31, 2014

16. The respective effective dates and policy limits for the aforementioned Steadfast, Zurich, and AGLIC policies are indicated in the table attached hereto as **Exhibit A**. Copies of the Policies are attached hereto as **Exhibits B – X** and are incorporated by reference as if fully set forth herein.

17. All Steadfast, Zurich, and AGLIC Policies were issued to Geeding and delivered to Geeding at its Missouri address at 600 Highway H, Troy, Missouri 63379.

18. Policies BOG-5945983-00, BOG-5945983-01, GLO-5945983-02, GLO-5945983-03, and GLO-1040244-00 et. seq. (collectively "the CGL Policies") are all commercial general liability ("CGL") policies, which sit beneath at least one excess policy.

19. Policies No. BOG-5945983-00 and BOG-5945983-01 contain the following relevant provisions, among others:

***

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…
b. This insurance applies to “bodily injury” or “property damage” only if:
   (1) The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory”;
   (2) The “bodily injury” or “property damage” occurs during the policy period; and
   (3) Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured and no “employee” authorized by you to receive notice of an “occurrence” or claim, knew that the “bodily injury” or “property damage” had occurred, in whole or in part. If such a listed insured or authorized “employee” knew, prior to the policy period, that the “bodily injury” or “property damage” occurred, then any continuation, change or resumption of such “bodily injury” or “property damage” during or after the policy period will be deemed to have been known prior to the policy period.
c. “Bodily injury” or “property damage” which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of the Section **II** – Who Is An Insured or any “employee” authorized by you to give or receive notice of an “occurrence” or claim, includes any continuation, change or resumption of that “bodily injury” or “property damage” after the end of the policy period.
d. “Bodily injury” or “property damage” will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured or “employee” authorized by you to give or receive notice of an “occurrence” or claim:
   (1) Reports all, or any part, of the “bodily injury” or “property damage” to us or any other insurer;
   (2) Receives a written or verbal demand or claim for damages because of “bodily injury” or “property damage”; or
   (3) Becomes aware by any other means that “bodily injury” or “property damage” has occurred or has begun to occur.

…

1. Exclusions

   This insurance does not apply to:

…

b. Contractual Liability
   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
   (1) That the insured would have in the absence of the contract or agreement; or
   (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution

of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party s defense has also been assumed in the same "insured contract"; and

(b) Such attorneys fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

…

f. Pollution[1]

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.[2]

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or[3]

…

j. Damage to Property

"Property damage" to:

…

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

---

[1] As amended by Endorsement No. CG 21 49 09 99.

[2] As amended by Endorsement No. CG 21 49 09 99.

[3] As amended by Endorsement No. CG 21 49 09 99.

…

Total Professional Liability Exclusion[4]

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services, which you or someone on your behalf perform or offer to perform for a third party for a fee or other consideration.[5]

…

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

…

g. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

…

SECTION V – DEFINITIONS

…

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.
16. "Products-completed operations hazard":
    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or “your work" except:
        (1) Products that are still in your physical possession; or

        (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            (a) When all of the work called for in your contract has been completed.

            (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

---

[4] As added by Endorsement No. BOG 21 38 1103.
[5] As added by Endorsement No. BOG 21 38 1103.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

…

22. “Your work”:

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

***

*See* **Exhibits B and C.**

20. Policies No. GLO-5945983-02 and GLO-5945983-03 contain the following relevant provisions, among others:

***

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…
   b. This insurance applies to "bodily injury" or "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
      (2) The "bodily injury" or "property damage" occurs during the policy period; and
      (3) Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured and no "employee" authorized by you to receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of the Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.
   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured or "employee" authorized by you to give or receive notice of an "occurrence" or claim:
      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
      (2) Receives a written or verbal demand or claim for damages because of "bodily injury" or "property damage"; or
      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

…

2. Exclusions

   This insurance does not apply to:

…

   b. Contractual Liability
   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party s defense has also been assumed in the same "insured contract"; and

(b) Such attorneys fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

…

f. Pollution[6]

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.[7]

…

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or[8]

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.[9]

…

j. Damage to Property

"Property damage" to:

…

[6] As amended by Endorsement No. CG 21 65 12 04.
[7] As amended by Endorsement No. CG 21 65 12 04.
[8] As amended by Endorsement No. CG 21 65 12 04.
[9] As added by Endorsement No. CG 01 34 08 03.

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

m. Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

…

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

…

f. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

…

SECTION V – DEFINITIONS

…

a. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

18. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

19. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or “your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or sub contractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

20. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

…

22. “Your work”:

a. Means:
(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.
b. Includes
(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
(2) The providing of or failure to provide warnings or instructions.

***

*See* **<u>Exhibits D and E.</u>**

21. The Commercial General Liability Form in Policies No. GLO-1040244-00 through GLO-1040244-10 contain the following relevant provisions, among others:

***

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…
   b. This insurance applies to "bodily injury" or "property damage" only if:
      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
      (2) The "bodily injury" or "property damage" occurs during the policy period; and
      (3) Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured and no "employee" authorized by you to receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of the Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.
   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured or "employee" authorized by you to give or receive notice of an "occurrence" or claim:
      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
      (2) Receives a written or verbal demand or claim for damages because of "bodily injury" or "property damage"; or
      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

…

3. **Exclusions**

   This insurance does not apply to:

…

   b. Contractual Liability

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party s defense has also been assumed in the same "insured contract"; and

(b) Such attorneys fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

…

**f. Pollution**[10]

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated: [11]

(a) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; [12]
Or
(b) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of "pollutants".[13]

(2) Any loss, cost or expense arising out of any: [14]

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or[15]

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing,

---

[10] As amended by Endorsement No. CG 21 55 09 99.
[11] As amended by Endorsement No. CG 21 55 09 99.
[12] As amended by Endorsement No. CG 21 55 09 99.
[13] As amended by Endorsement No. CG 21 55 09 99.
[14] As amended by Endorsement No. CG 21 55 09 99.
[15] As amended by Endorsement No. CG 21 55 09 99.

treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, "pollutants".[16]

…

**j. Damage to Property**

"Property Damage" to:

…

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

…

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

…

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys fees or attorneys expenses taxed against the insured.

…

**SECTION V – DEFINITIONS**

…

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

---

[16] As amended by Endorsement No. CG 21 55 09 99.

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
   (1) Products that are still in your physical possession; or
   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
      (a) When all of the work called for in your contract has been completed
      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

…

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

…

22. "Your work":

a. Means:

   (1) Work or operations performed by you or on your behalf; and

   (2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:
   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   (2) The providing of or failure to provide warnings or instructions.

***

*See* **Exhibits F-P.**

22. The Commercial General Liability Form in Policies No. GLO-1040244-11 through contain GLO-1040244-12 the following relevant provisions, among others:

***

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…

b. This insurance applies to “bodily injury” or “property damage” only if:

(1) The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory”;

(2) The “bodily injury” or “property damage” occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured and no “employee” authorized by you to receive notice of an “occurrence” or claim, knew that the “bodily injury” or “property damage” had occurred, in whole or in part. If such a listed insured or authorized “employee” knew, prior to the policy period, that the “bodily injury” or “property damage” occurred, then any continuation, change or resumption of such “bodily injury” or “property damage” during or after the policy period will be deemed to have been known prior to the policy period.

c. “Bodily injury” or “property damage” which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of the Section **II** – Who Is An Insured or any “mployee” authorized by you to give or receive notice of an “occurrence” or claim, includes any continuation, change or resumption of that “bodily injury” or “property damage” after the end of the policy period.

d. “Bodily injury” or “property damage” will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. Of Section II – Who Is An Insured or “employee” authorized by you to give or receive notice of an “occurrence” or claim:

(1) Reports all, or any part, of the “bodily injury” or “property damage” to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of “bodily injury” or “property damage”; or

(3) Becomes aware by any other means that “bodily injury” or “property damage” has occurred or has begun to occur.

…

**2. Exclusions**
This insurance does not apply to:

…

b. Contractual Liability
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
(a) Liability to such party for, or for the cost of, that party s defense has also been assumed in the same "insured contract"; and
(b) Such attorneys fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

…

**f. Pollution**[17]
(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
This exclusion does not apply to:[18]
(a) "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or[19]
(b) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:
(i) At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or[20]
(ii) At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any

[17] As amended by Endorsement No. CG 21 65 12 04.
[18] As amended by Endorsement No. CG 21 65 12 04.
[19] As amended by Endorsement No. CG 21 65 12 04.
[20] As amended by Endorsement No. CG 21 65 12 04.

insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".[21]

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

…

**k. Damage to Property**

"Property Damage" to:

…

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

…

**m. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

…

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

2. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

…

f. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys fees or attorneys expenses taxed against the insured.

…

**SECTION V – DEFINITIONS**

…

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

---

[21] As amended by Endorsement No. CG 21 65 12 04.

…

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

    b. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
    (1) Products that are still in your physical possession; or
    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
        (a) When all of the work called for in your contract has been completed
        (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
        (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

…

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CDROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

…

22. "Your work":

    c. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

d. Includes:
   (2) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

   (2) The providing of or failure to provide warnings or instructions.

***

*See* **Exhibit Q-R.**

23. Policies No. UMB -5945991-00 et. seq. and AUC-5945991-04 et. seq. (collectively "the Umbrella Policies") are all excess follow form liability and commercial umbrella liability policies.

24. Policies No. UMB-5945991-00 and No. UMB-5945991-01 contain the following relevant provisions, among others:

***

SECTION I. COVERAGE

A. **Coverage A – Excess Follow Form Liability Insurance**
   Under **Coverage A**, we will pay on behalf of the insured, those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to **Coverage A**, the terms and conditions of the **underlying insurance** are made part of this policy except with respect to:
   1. Any contrary provision contained in this policy; or
   2. Any provision in this policy except for which a similar provision not contained in the **underlying insurance**.

   With respect to the exceptions stated above, the provisions of this policy will apply.
   Notwithstanding anything to the contrary contained above, if the **underlying insurance** does not apply to damages for reasons other than exhaustion of applicable limits of insurance by payment of claims, then **Coverage A** does not apply to such damages.

B. **Coverage B – Umbrella Liability Insurance**
   Under **Coverage B**, we will pay on behalf of **insured**, sums of damages the insured becomes legally obligated to pay by reason of liability impose by law or assumed under an insured contract because of **bodily injury, property damage, or personal and advertising injury** covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an **occurrence** happening anywhere. We will pay such damages in excess of the **Retained Limit** specified in Item. 5. of the Declarations or the amount payable by **other insurance**, whichever is greater.

**Coverage B** will not apply to any **loss**, claim or **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the limits of insurance of **underlying insurance**.

…

The insurance afforded under **Coverage A and Coverage B** applies to **bodily injury** or **property damage** only if prior to the policy period, no **designated insured** knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a **designated insured** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

**Bodily injury** or **property damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any designated insured includes any continuation, change, or resumption of that **bodily injury** or **property damage** after the policy period; and

**Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any **designated insured**:

1. Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;
2. Received a written or verbal demand for damages because of the **bodily injury** or **property damage**; or
3. Becomes aware by any other means that **bodily injury** or property **damage** has occurred or has begun to occur.

…

SECTION IV. EXCLUSIONS

…

Under **Coverage A** and **Coverage B,** this policy does not apply to any liability, damage, **loss**, cost or expense:

POLLUTION[22]

1. Arising directly or indirectly out of the actual, alleged or threatened existence, discharge, seepage, migration; dispersal; release escape of **pollutants**. [23]

2. Arising out of any:
   a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or[24]
   b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating,

---

[22] As amended by Endorsement No. U-UMB-524-A-CW (08/05).
[23] As amended by Endorsement No. U-UMB-524-A-CW (08/05).
[24] As amended by Endorsement No. U-UMB-524-A-CW (08/05).

detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.[25]

This pollution exclusion applies whether or not such pollutants have any function in your business, operations, premises, site or location.

…

A. Under Coverage A this policy does not apply to any liability, damage, loss, cost or expense:

…

PROPERTY DAMAGE
8. Property damage to:

…

e. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations.
f. That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it;

…

h. Your work airing out of it or any part of it and included in the **products-completed operations hazard.**

…

Professional Services Exclusion[26]

…

Under Coverage A and Coverage B this policy does not apply to any liability, damage, loss, cost or expense arising out of any breach of duty, negligent act, error or omission in the rendering of or failure to render any professional services in the capacity designated below:[27]

**Designated Capacity**

ALL PROFESSIONAL SERVICES[28]

…

SECTION V. DEFINITIONS
In this policy words and phrases appearing in bold face type have the definitions shown below.
A. The following definitions are applicable to both **Coverage A** and **Coverage B**.

…

4. Pollutants mean any man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to: smoke; vapor; soot; fumes; acids; alkalis; chemicals; and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

---

[25] As amended by Endorsement No. U-UMB-524-A-CW (08/05).
[26] As added by Endorsement No. U-UMB-228-B CW (7/2003).
[27] As added by Endorsement No. U-UMB-228-B CW (7/2003).
[28] As added by Endorsement No. U-UMB-228-B CW (7/2003).

…

B. The following definition is applicable to **Coverage B** only:

…

9. **Occurrence** means:
   a. With respect to bodily injury or property damage liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

12. **Property damage** means:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such Joss shall be deemed to occur at the time of the occurrence that caused it.

…

15. **Your work** means:
    a. Work or operations performed by you or on your behalf; and
    b. Materials, parts, or equipment furnished in connection with such work or operations.

    Your work includes:
    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and
    b. The providing of or failure to provide warnings or instructions.

***

*See* **Exhibits S and T.**

25. Policy No. UMB-594991-02 contains the following relevant provisions, among others:

***

SECTION I. COVERAGE

**2. Coverage A – Excess Follow Form Liability Insurance**

Under **Coverage A**, we will pay on behalf of the **insured**, those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to **Coverage A**, the terms and conditions of the **underlying insurance** are made part of this policy except with respect to:

1. The terms and conditions of **underlying insurance** to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph **2.** below; and
2. The terms and conditions that apply to Coverage A of this policy.

Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of **loss**, then **Coverage A** does not apply to such damages.

Also, **Coverage A** does not apply to any form of casualty business crisis expense insurance even if such insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

3. **Coverage B – Umbrella Liability Insurance**
   Under **Coverage B**, we will pay on behalf of **insured**, those damages the **insured** becomes legally obligated to pay by reason of liability:
   1. Imposed by law because of bodily injury, property damage, or personal and advertising injury; or
   2. Assumed under an insured contract because of bodily injury or property damage; covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an occurrence happening anywhere. We will pay such damages in excess of the Retained Limit specified in Item 5. of the Declarations or the amount payable by other insurance, whichever is greater.

   **Coverage B** does not apply to any **loss**, claim or **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

…

The insurance afforded under **Coverage A** and **Coverage B** applies to **bodily injury** or **property damage** only if prior to the policy period, no **designated insured** knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a **designated insured** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

**Bodily injury** or **property damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any designated insured includes any continuation, change, or resumption of that **bodily injury** or **property damage** after the policy period; and

**Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any **designated insured**:

1. Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;
2. Received a written or verbal demand for damages because of the **bodily injury** or **property damage**; or
3. Becomes aware by any other means that **bodily injury** or property **damage** has occurred or has begun to occur.

…

SECTION IV. EXCLUSIONS

…

Under **Coverage B,** this policy does not apply to:

…

**POLLUTION**

6. Any liability, damage loss, cost or expenses:
    a. Arising directly or indirectly out of the actual, alleged or threatened existence, discharge, seepage, migration; dispersal; release escape of "pollutants."
    b. Arising out of any:
        1. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
        2. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

…

**PROPERTY DAMAGE**

8. **Property damage** to:

…

g. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations.

h. That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it;

…

h. Your work arising out of it or any part of it and included in the **products-completed operations hazard.**

…

SECTION V. DEFINITIONS

In this policy, words and phrases appearing in bold face type have the definitions shown below.

A. The following definitions are applicable to both **Coverage A**, **Coverage B** and **Coverage C.**

…

5. Pollutants mean any man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to: smoke; vapor; soot; fumes; acids; alkalis; chemicals; and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

…

7. The following definitions are applicable to **Coverage A** only:

…

4. Occurrence means a covered event as defined in underlying insurance.

…

C. The following definition is applicable to **Coverage B** only:

…

11. **Occurrence** means:
    b. With respect to bodily injury or property damage liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

13. **Products-completed operations hazard** means all bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work except:
    a. Products that are still in your physical possession; or
    b. Work that has not yet been completed or abandoned. Your work will be deemed completed at the earliest of the following times:
        (1) When all of the work called for in your contract has been completed;
        (2) When all of the work to be done at the site has been completed if your contract calls for work at more
        than one site; or
        (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    This hazard does not include bodily injury or property damage arising out of:
    a. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it by any insured; or
    b. The existence of tools, uninstalled equipment or abandoned or unused materials.
14. **Property damage** means:
    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    b. Loss of use of tangible property that is not physically injured. All such Joss shall be deemed to occur at the time of the occurrence that caused it.

…

15. **Your work** means:
    a. Work or operations performed by you or on your behalf; and
    b. Materials, parts, or equipment furnished in connection with such work or operations.

    Your work includes:
    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and
    b. The providing of or failure to provide warnings or instructions.

***

*See* **Exhibit U.**

26. Policy No. UMB-594991-03 contains the following relevant provisions, among others:

***

SECTION I. COVERAGE

**4. Coverage A – Excess Follow Form Liability Insurance**

Under **Coverage A**, we will pay on behalf of the **insured**, those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to **Coverage A**, the terms and conditions of the **underlying insurance** are made part of this policy except with respect to:

1. The terms and conditions of **underlying insurance** to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph **2.** below; and
3. The terms and conditions that apply to Coverage A of this policy.

Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of **loss**, then **Coverage A** does not apply to such damages. Also, **Coverage A** does not apply to any form of casualty business crisis expense insurance even if such insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

**5. Coverage B – Umbrella Liability Insurance**

Under **Coverage B**, we will pay on behalf of **insured**, those damages the **insured** becomes legally obligated to pay by reason of liability:

3. Imposed by law because of bodily injury, property damage, or personal and advertising injury; or
4. Assumed under an insured contract because of bodily injury or property damage; covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an occurrence happening anywhere. We will pay such damages in excess of the Retained Limit specified in Item 5. of the Declarations or the amount payable by other insurance, whichever is greater.

**Coverage B** does not apply to any **loss**, claim or **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

…

The insurance afforded under **Coverage A** and **Coverage B** applies to **bodily injury** or **property damage** only if prior to the policy period, no **designated insured** knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a **designated**

**insured** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

**Bodily injury** or **property damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any designated insured includes any continuation, change, or resumption of that **bodily injury** or **property damage** after the policy period; and

**Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any **designated insured**:

4. Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;
5. Received a written or verbal demand for damages because of the **bodily injury** or **property damage**; or
6. Becomes aware by any other means that **bodily injury** or property **damage** has occurred or has begun to occur.

…

SECTION IV. EXCLUSIONS

…

Under **Coverage B,** this policy does not apply to:

…

**POLLUTION**

4. Any liability, damage loss, cost or expenses:
    1. Arising directly or indirectly out of the actual, alleged or threatened existence, discharge, seepage, migration; dispersal; release escape of "pollutants."[29]
    2. Arising out of any:[30]
        a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or[31]
        b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."[32]

As used in this endorsement, "pollutants" means any man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to:

[29] As amended by Endorsement No. U-UMB-200-A CW (7/99)
[30] As amended by Endorsement No.U-UMB-200-A CW (7/99)
[31] As amended by Endorsement No.U-UMB-200-A CW (7/99)
[32] As amended by Endorsement No.U-UMB-200-A CW (7/99)

smoke; vapor; soot; fumes; acids; alkalis; chemicals; and waste. Waste includes materials to be recycled, reconditioned or reclaimed.[33]

However, it is agreed that this exclusion does not apply to any liability, damage, loss, cost or expense described above for which coverage is afforded under (Zurich American Insurance Company) Policy No. (GLO5945983-03) and then for no broader coverage than is afforded by such insurance (hereafter referred to as the "Underlying Pollution Coverage") . In the event that the "Underlying Pollution Coverage" is amended or deleted after the inception date of this policy, we must be so advised in writing within 14 days after the effective date of such amendment or deletion. Any amendment which broadens coverage under the "Underlying Pollution Coverage" shall not be binding upon us unless our agreement is acknowledged in writing by an authorized representative of the Company.[34]

…

**PROPERTY DAMAGE**

8. **Property damage** to:

…

   e. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations.
   f. That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it;

…

   h. Your work arising out of it or any part of it and included in the **products-completed operations hazard**.

…

Professional Liability Follow Form[35]

…

Under Coverage B, this policy does not apply to any liability, damage, loss, cost or expense arising out of any breach of duty, negligent act, error, misstatement or omission of any insured, or any person for whom the insured is legally responsible, in the rendering of or failure to render any professional service.[36]

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.[37]

…

[33] As amended by Endorsement No.U-UMB-200-A CW (7/99)
[34] As amended by Endorsement No.U-UMB-200-A CW (7/99)
[35] As added by Endorsement No. U-UMB-229C CW (03/10).
[36] As added by Endorsement No. U-UMB-229C CW (03/10).
[37] As added by Endorsement No. U-UMB-229C CW (03/10).

SECTION V. DEFINITIONS
In this policy, words and phrases appearing in bold face type have the definitions shown below.

A. The following definitions are applicable to both **Coverage A**, **Coverage B** and **Coverage C.**

…

6. Pollutants mean any man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to: smoke; vapor; soot; fumes; acids; alkalis; chemicals; and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

…

5. The following definitions are applicable to **Coverage A** only:

…

5. Occurrence means a covered event as defined in underlying insurance.

…

D. The following definition is applicable to **Coverage B** only:

…

10. **Occurrence** means:
    a. With respect to bodily injury or property damage liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

14. **Products-completed operations hazard** means all bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work except:
    c. Products that are still in your physical possession; or
    d. Work that has not yet been completed or abandoned. Your work will be deemed completed at the earliest of the following times:
        (1) When all of the work called for in your contract has been completed;
        (2) When all of the work to be done at the site has been completed if your contract calls for work at more
        than one site; or
        (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    This hazard does not include bodily injury or property damage arising out of:
    c. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it by any insured; or

d. The existence of tools, uninstalled equipment or abandoned or unused materials.

14. **Property damage** means:

c. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

d. Loss of use of tangible property that is not physically injured. All such Joss shall be deemed to occur at the time of the occurrence that caused it.

…

15. **Your work** means:

c. Work or operations performed by you or on your behalf; and

d. Materials, parts, or equipment furnished in connection with such work or operations.

Your work includes:

1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and
2. The providing of or failure to provide warnings or instructions.

***

*See* **Exhibit V.**

27. Policy No. AUC-5945991-04 contains the following relevant provisions, among others:

***

SECTION I. COVERAGE

**6. Coverage A – Excess Follow Form Liability Insurance**

Under **Coverage A**, we will pay on behalf of the **insured**, those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to **Coverage A**, the terms and conditions of the **underlying insurance** are made part of this policy except with respect to:

1. The terms and conditions of **underlying insurance** to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph **2.** below; and

4. The terms and conditions that apply to Coverage A of this policy.

Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of **loss**, then **Coverage A** does not apply to such damages. Also, **Coverage A** does not apply to any form of casualty business crisis expense insurance even if such insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

7. **Coverage B – Umbrella Liability Insurance**
   Under **Coverage B**, we will pay on behalf of **insured**, those damages the **insured** becomes legally obligated to pay by reason of liability:
   5. Imposed by law because of bodily injury, property damage, or personal and advertising injury; or
   6. Assumed under an insured contract because of bodily injury or property damage; covered by this insurance but only if the injury, damage or offense arises out of your business, takes place during the policy period of this policy and is caused by an occurrence happening anywhere. We will pay such damages in excess of the Retained Limit specified in Item 5. of the Declarations or the amount payable by other insurance, whichever is greater.

   **Coverage B** does not apply to any **loss**, claim or **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

…

The insurance afforded under **Coverage A** and **Coverage B** applies to **bodily injury** or **property damage** only if prior to the policy period, no **designated insured** knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a **designated insured** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

**Bodily injury** or **property damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any designated insured includes any continuation, change, or resumption of that **bodily injury** or **property damage** after the policy period; and

**Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any **designated insured**:

7. Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;
8. Received a written or verbal demand for damages because of the **bodily injury** or **property damage**; or
9. Becomes aware by any other means that **bodily injury** or property **damage** has occurred or has begun to occur.

…

SECTION IV. EXCLUSIONS

…

Under **Coverage B,** this policy does not apply to:

…

**POLLUTION**

6. Any liability, damage loss, cost or expenses:
   1. Arising directly or indirectly out of the actual, alleged or threatened existence, discharge, seepage, migration; dispersal; release escape of "pollutants."[38]
   2. Arising out of any:[39]
      a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or[40]
      b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."[41]

As used in this endorsement, "pollutants" means any man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to: smoke; vapor; soot; fumes; acids; alkalis; chemicals; and waste. Waste includes materials to be recycled, reconditioned or reclaimed.[42]

However, it is agreed that this exclusion does not apply to any liability, damage, loss, cost or expense described above for which coverage is afforded under AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY POLICY NO. AUC5945991-04 and then for no broader coverage than is afforded by such insurance (hereafter referred to as the "Underlying Pollution Coverage") . In the event that the "Underlying Pollution Coverage" is amended or deleted after the inception date of this policy, we must be so advised in writing within 14 days after the effective date of such amendment or deletion. Any amendment which broadens coverage under the "Underlying Pollution Coverage" shall not be binding upon us unless our agreement is acknowledged in writing by an authorized
representative of the Company.[43]

…

Professional Liability Follow Form[44]

…

Under **Coverage B**, this policy does not apply to any liability, damage, loss, cost or expense arising out of any breach of duty, negligent act, error, misstatement or omission

[38] As amended by Endorsement No. U-UMB-200-A CW (7/99)
[39] As amended by Endorsement No.U-UMB-200-A CW (7/99)
[40] As amended by Endorsement No.U-UMB-200-A CW (7/99)
[41] As amended by Endorsement No.U-UMB-200-A CW (7/99)
[42] As amended by Endorsement No.U-UMB-200-A CW (7/99)
[43] As amended by Endorsement No.U-UMB-200-A CW (7/99).
[44] As added by Endorsement No. U-UMB-229-C CW (03/10).

of any insured, or any person for whom the insured is legally responsible, in the rendering of or failure to render any professional service.[45]

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.[46]

…

**PROPERTY DAMAGE**

8. **Property damage** to:

…

e. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations.
f. That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it;

…

h. Your work arising out of it or any part of it and included in the products-completed operations hazard.

…

Professional Liability Follow Form[47]

…

Under Coverage B, this policy does not apply to any liability, damage, loss, cost or expense arising out of any breach of duty, negligent act, error, misstatement or omission of any insured, or any person for whom the insured is legally responsible, in the rendering of or failure to render any professional service.[48]

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.[49]

…

SECTION V. DEFINITIONS

In this policy, words and phrases appearing in bold face type have the definitions shown below.

A. The following definitions are applicable to both **Coverage A**, **Coverage B** and **Coverage C.**

…

[45] As added by Endorsement No. U-UMB-229-C CW (03/10).
[46] As added by Endorsement No. U-UMB-229-C CW (03/10).
[47] As added by Endorsement No. U-UMB-229-C CW (03/10).
[48] As added by Endorsement No. U-UMB-229-C CW (03/10).
[49] As added by Endorsement No. U-UMB-229-C CW (03/10).

7. Pollutants mean any man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to: smoke; vapor; soot; fumes; acids; alkalis; chemicals; and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

…

7. The following definitions are applicable to **Coverage A** only:

…

6. Occurrence means a covered event as defined in underlying insurance.

…

E. The following definition is applicable to **Coverage B** only:

…

11. **Occurrence** means:
    a. With respect to bodily injury or property damage liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

13. **Products-completed operations hazard** means all bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work except:
    a. Products that are still in your physical possession; or
    b. Work that has not yet been completed or abandoned. Your work will be deemed completed at the earliest of the following times:
        (1) When all of the work called for in your contract has been completed;
        (2) When all of the work to be done at the site has been completed if your contract calls for work at more
        than one site; or
        (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    This hazard does not include bodily injury or property damage arising out of:
    e. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it by any insured; or
    f. The existence of tools, uninstalled equipment or abandoned or unused materials.
14. **Property damage** means:
    e. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    f. Loss of use of tangible property that is not physically injured. All such Joss shall be deemed to occur at the time of the occurrence that caused it.

…

15. **Your work** means:
   e. Work or operations performed by you or on your behalf; and
   f. Materials, parts, or equipment furnished in connection with such work or operations.

   Your work includes:
   1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and
   2. The providing of or failure to provide warnings or instructions.

***

*See* **Exhibit W.**

28. The Policy No. AUC-5945991-05 contains the following relevant provisions, among others:

***

SECTION I. COVERAGE

8. **Coverage A – Excess Follow Form Liability Insurance**
   Under **Coverage A**, we will pay on behalf of the **insured**, those damages covered by this insurance in excess of the total applicable limits of **underlying insurance**. With respect to **Coverage A**, the terms and conditions of the **underlying insurance** are made part of this policy except with respect to:
   1. The terms and conditions of **underlying insurance** to the extent such terms and conditions are not inconsistent or do not conflict with the terms and conditions referred to in Paragraph **2.** below; and
   5. The terms and conditions that apply to Coverage A of this policy.

   Notwithstanding anything to the contrary contained above, if **underlying insurance** does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of **loss**, then **Coverage A** does not apply to such damages. Also, **Coverage A** does not apply to any form of casualty business crisis expense insurance even if such insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

9. **Coverage B – Umbrella Liability Insurance**
   Under **Coverage B**, we will pay on behalf of **insured**, those damages the **insured** becomes legally obligated to pay by reason of liability:
   7. Imposed by law because of bodily injury, property damage, or personal and advertising injury; or
   8. Assumed under an insured contract because of bodily injury or property damage; covered by this insurance but only if the injury, damage or offense

arises out of your business, takes place during the policy period of this policy and is caused by an occurrence happening anywhere. We will pay such damages in excess of the Retained Limit specified in Item 5. of the Declarations or the amount payable by other insurance, whichever is greater.

**Coverage B** does not apply to any **loss**, claim or **suit** for which insurance is afforded under **underlying insurance** or would have been afforded except for the exhaustion of the Limits of Insurance of **underlying insurance**.

…

The insurance afforded under **Coverage A** and **Coverage B** applies to **bodily injury** or **property damage** only if prior to the policy period, no **designated insured** knew that the **bodily injury** or **property damage** had occurred, in whole or in part. If such a **designated insured** knew, prior to the policy period, that the **bodily injury** or **property damage** occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the policy period will be deemed to have been known prior to the policy period.

**Bodily injury** or **property damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any designated insured includes any continuation, change, or resumption of that **bodily injury** or **property damage** after the policy period; and

**Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any **designated insured**:

10. Reports all, or any part, of the **bodily injury** or **property damage** to us or any other insurer;
11. Received a written or verbal demand for damages because of the **bodily injury** or **property damage**; or
12. Becomes aware by any other means that **bodily injury** or property **damage** has occurred or has begun to occur.

…

SECTION IV. EXCLUSIONS

Under Coverage A and Coverage B this policy does not apply to any liability, damage, loss, cost or expense:[50]

POLLUTION

1. Arising directly or indirectly out of the actual, alleged or threatened existence, discharge, seepage, migration, dispersal, release or escape of pollutants.[51]

   This exclusion does not apply to bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire unless that hostile fire occurred or originated:[52]

[50] As amended by Endorsement No. U-UMB-664-A CW (03/10).
[51] As amended by Endorsement No. U-UMB-664-A CW (03/10).
[52] As amended by Endorsement No. U-UMB-664-A CW (03/10).

a. At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or[53]

b. At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, pollutants.[54]

2. Arising out of any:[55]

a. Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or[56]

b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

As used in this endorsement, hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.[57]

…

Under **Coverage B,** this policy does not apply to:

…

Professional Liability Follow Form[58]

…

Under **Coverage B**, this policy does not apply to any liability, damage, loss, cost or expense arising out of any breach of duty, negligent act, error, misstatement or omission of any insured, or any person for whom the insured is legally responsible, in the rendering of or failure to render any professional service.[59]

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.[60]

…

[53] As amended by Endorsement No. U-UMB-664-A CW (03/10).
[54] As amended by Endorsement No. U-UMB-664-A CW (03/10).
[55] As amended by Endorsement No. U-UMB-664-A CW (03/10).
[56] As amended by Endorsement No. U-UMB-664-A CW (03/10).
[57] As amended by Endorsement No. U-UMB-664-A CW (03/10).
[58] As added by Endorsement No. U-UMB-229-C CW (03/10).
[59] As added by Endorsement No. U-UMB-229-C CW (03/10).
[60] As added by Endorsement No. U-UMB-229-C CW (03/10).

**PROPERTY DAMAGE**

9. **Property damage** to:

…

   e. That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations.
   f. That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it;

…

   g. Your work arising out of it or any part of it and included in the **products-completed operations hazard**.

…

Professional Liability Follow Form[61]

…

Under Coverage B, this policy does not apply to any liability, damage, loss, cost or expense arising out of any breach of duty, negligent act, error, misstatement or omission of any insured, or any person for whom the insured is legally responsible, in the rendering of or failure to render any professional service.[62]

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured.[63]

…

SECTION V. DEFINITIONS

In this policy, words and phrases appearing in bold face type have the definitions shown below.

A. The following definitions are applicable to both **Coverage A**, **Coverage B** and **Coverage C.**

…

8. Pollutants mean any man-made or naturally occurring solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to: smoke; vapor; soot; fumes; acids; alkalis; chemicals; and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

…

6. The following definitions are applicable to **Coverage A** only:

…

7. Occurrence means a covered event as defined in underlying insurance.

…

[61] As added by Endorsement No. U-UMB-229-C CW (03/10).
[62] As added by Endorsement No. U-UMB-229-C CW (03/10).
[63] As added by Endorsement No. U-UMB-229-C CW (03/10).

F. The following definition is applicable to **Coverage B** only:

…

12. **Occurrence** means:
    a. With respect to bodily injury or property damage liability, an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

a. **Products-completed operations hazard** means all bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work except:
    c. Products that are still in your physical possession; or
    d. Work that has not yet been completed or abandoned. Your work will be deemed completed at the earliest of the following times:
        (1) When all of the work called for in your contract has been completed;
        (2) When all of the work to be done at the site has been completed if your contract calls for work at more
        than one site; or
        (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    This hazard does not include bodily injury or property damage arising out of:
    g. The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the loading or unloading of it by any insured; or
    h. The existence of tools, uninstalled equipment or abandoned or unused materials.

14. **Property damage** means:
    g. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
    h. Loss of use of tangible property that is not physically injured. All such Joss shall be deemed to occur at the time of the occurrence that caused it.

…

15. **Your work** means:
    g. Work or operations performed by you or on your behalf; and
    h. Materials, parts, or equipment furnished in connection with such work or operations.

    Your work includes:
    1. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and
    2. The providing of or failure to provide warnings or instructions.

***

*See* **Exhibit X.**

29. Between 2008 and 2022, Buckeye, a midstream energy company, hired Geeding, a construction company specializing in pipeline construction and maintenance, to perform numerous pipeline repairs and replacements.

30. More specifically, Buckeye frequently hired Geeding to install Type B Steel Repair Sleeves ("Repair Sleeves") to Buckeye's pipelines during this timeframe.

31. On or about November 24, 2020, a leak was detected on Pipeline WO180XX ("Line 180") in a Repair Sleeve installed by Geeding on December 14, 2014.

32. The leak resulted in a spill of approximately 47 barrels of gasoline, prompting Line 180 to be shut down, excavated, inspected for defects, and subsequently repaired.

33. On or about December 2, 2020, Line 180 was returned to service, after the leak at Line 180 was repaired by removing the Repair Sleeve installed by Geeding and installing a new section of pipeline.

34. In September 2021, Buckeye provided to Geeding a copy of a metallurgical analysis report from Buckeye's independent consultant DNV GL USA, Inc. ("DNV"), which concluded that the leak in the Repair Sleeve on Line 180 was caused by a crack due to inadequate penetration at the weld root performed by Geeding.

35. From June 2022 through June 2025, Buckeye sent fourteen additional Geeding-installed Repair Sleeves, which have not yet cracked nor leaked, for analysis by DNV, which determined that there were welding defects in every sleeve.

36. Thereafter, Buckeye engaged in proactive replacement of non-leaking Repair Sleeves that had previously been installed by Geeding due to concern regarding welding defects.

37. Twelve replacement projects involved only the inspection and replacement of Geeding-installed Repair Sleeves: CN165ZIM2202, CS165XXE2101, KZ001LKE2103, SG162DUM2201, WO160BNE2103, WO160BNM2203, WO160BNM2301, WO180XXM2201, XB403CLM2302, XX165CNM2301, ZI165CMM2201.

38. Buckeye alleged that it incurred $10,921,486.54 for the costs incurred in connection with the aforementioned twelve projects.

39. Five replacement projects involved the inspection and replacement of Geeding-installed Repair Sleeves and Repair Sleeves installed by third parties: EB253USM2301, HD156KGM2401, XB003XXM2101, XF001KZM2301, XF001KZM2202.

40. Buckeye alleged that it incurred $3,829,762.87 for the costs incurred in connection with the aforementioned five projects.

41. To date, Buckeye has removed a total of 87 Repair Sleeves installed by Geeding, which were removed during the aforementioned projects.

42. Upon information and belief, as of today's date, Buckeye intends to perform additional proactive replacement non-leaking Repair Sleeves that had previously been installed by Geeding. Buckeye alleges that it will incur $5,256.192.31 for the planned removal of 31 additional Geeding-installed Repair Sleeves by 2028.

43. On or about November 27, 2023, Geeding filed a Demand for Arbitration with the American Arbitration Association, seeking in damages from Buckeye for unpaid work performed.

44. On December 8, 2023, Buckeye filed a Counterclaim against Geeding ("the Counterclaim") for breach of contract and breach of express warranty, generally alleging that Geeding performed defective welds in breach of the terms of purchase orders and the parties'

Master Services Agreement. A copy of Buckeye's Counterclaim is attached hereto as **Exhibit Y** and is incorporated by reference herein.

45. Zurich affording Geeding a defense to the counterclaim in the arbitration matter, subject to a reservation of rights. Geeding utilized its own selected defense counsel for the arbitration matter and at no point did Geeding object to Zurich's defense being provided subject to the reservation of rights.

46. The Arbitration Hearing between Buckeye and Geeding occurred August 18-22 and August 25-29, during which the parties presented nineteen fact witnesses, three experts, and over a thousand exhibits.

47. On February 17, 2026, the American Arbitration Association Panel entered its interim award ("the Interim Award"). A copy of the Interim Award is attached hereto as **Exhibit Z** and is incorporated by reference herein.

48. The Interim Award awarded to Buckeye $1,431,514.52 for Line 180 repairs and associated remediation; $12,521,133.54 for Sleeve Repair and Inspection to locations other than Line 180 and at which leaks had not occurred prior to repairs being made; $4,814,908.74 for future remediation at locations other than Line 180 and for which leaks have not occurred; and $423,800 for investigation and testing, including Line 180.

49. The Repair Sleeve on Line 180, which experienced a leak on November 24, 2020, is the only Repair Sleeve installed by Geeding at which a leak was ever reported.

50. All other sleeve repairs performed to date by Buckeye, or to be performed in the future by Buckeye, were or are proactive repairs intended to address potential leaks that could occur in the future.

51. According to the Interim Award, the Panel determined that Line 180 leaked because Geeding's welder failed to achieve adequate penetration when welding the Repair Sleeve installed on the pipeline.

52. The damages awarded with respect to Line 180 reflect Buckeye's costs caused by the Repair Sleeve Failure, and include the costs for excavation, repairs, contractor services, mechanical work, regulatory reporting, environmental remediation due to the spill of approximately 47 barrels of gasoline, engineering analysis, and other incident related expenses, which are outlined in Exhibit B. 254A ("Damages Excel"). A copy of the Damages Excel is attached hereto as **Exhibit AA** and is incorporated by reference herein.

53. The Line 180 damages are approximately ten times the amount attributable to non-leaking repair locations, demonstrating that approximately ninety percent of the damages associated with the Line 180 repair are associated with the remediation required due to the leak of pollutants into the surrounding materials.

54. The Panel further found that Geeding's defective welding caused Buckeye injury in the form of costs to remove additional Repair Sleeves installed by Geeding, which had not yet leaked but were identified as needing repair due to weld defects by a repair program developed by Buckeye.

55. The Interim Award also acknowledges that the Panel is permitted to award attorney fees and that Buckeye is the prevailing party. The Interim Award states that the Panel will set a briefing schedule for an application of attorneys' fees and costs, and the Panel will decide the amount to be awarded in its Final Award.

56. To date, the Panel's Final Award has not been made, although the damages awarded will be consistent with those identified herein in Paragraph 46, as well as include attorneys' fees and interest, which will be quantified therein.

57. An actual case or controversy of judicial nature exists between Zurich, Steadfast and American Guarantee and Liability Insurance Company and the Defendants concerning the rights and obligations of each party under the Policies, and litigation of this controversy is inevitable and imminent.

58. The resolution of the matters raised in this Complaint for Declaratory Judgment will dispose of all issues and disputes between the parties.

59. All necessary and proper parties are before the Court with respect to the matters in controversy.

60. Zurich has no adequate remedy at law.

**COUNT I – DECLARATORY JUDGMENT**
**PROPERTY DAMAGE AND OCCURENCE**

61. Plaintiffs re-allege and incorporate paragraph 1 through 60 as if fully set forth herein.

62. The CGL Policies' Coverage A affords coverage only with respect to "bodily injury" and "property damage" resulting from an "occurrence".

63. The Umbrella Policies' Coverage A affords follow form liability coverage with respect to four of the CGL Policies and two policies not issued by a Zurich affiliated company, upon exhaustion of the underlying CGL Policies.

64. The Umbrella Policies' Coverage B affords umbrella coverage with respect to liability imposed by law because of "bodily injury," "property damage," and "personal and advertising injury." Coverage B does not apply if Coverage A applies and/or has been exhausted.

65. The Interim Award makes no mention or award of any sort relating to "bodily injury" nor "personal and advertising injury".

66. The CGL Policies and Umbrella Policies define "property damage" as "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;" or "Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it."

67. The CGL Policies and Umbrella Policies generally define "occurrence" as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

68. As outlined above and in the attached **Exhibit Z**, the Interim Award to Buckeye includes $1,431,514.52 for Line 180, which consists of the costs for excavation, repairs, contractor services, mechanical work, regulatory reporting, environmental remediation due to the spill of approximately 47 barrels of gasoline, engineering analysis, and other incident related expenses associated with the leak.

69. Under controlling Missouri law, Line 180 is the only sleeve repair for which "property damage," as that phrase is defined by the CGL Policies and Umbrella Policies, can be deemed to have occurred and, that "property damage" did not occur until the time that the leak at Line 180 first occurred in November 2020, with said repairs having been completed as of February 2021.

70. All other damages awarded are for preventative sleeve repair and inspection of Repair Sleeves installed by Geeding, which has already taken place, or which will take place in the future.

71. Additionally, all damages awarded to Buckeye in the Interim Award were awarded as a result of Geeding's breach of contract.

72. No leaks or other "resulting damages" occurred at any Sleeve Repair other than that associated with the Line 180 Repair and the repair costs incurred or to be incurred at these other locations are limited to the costs associated with removing and replacing Geeding's allegedly deficient work at those other locations in violation of Geeding's contract with Buckeye.

73. All damages awarded in the Interim Award, except for the damages awarded for Line 180, were because of Geeding's breach of contract due to the Repair Sleeves containing defective welding, which did not crack or damage any other property at any time, such that these damages were not because of physical injury to tangible property but are instead solely associated with alleged deficiencies in Geeding's work and the alleged need to repair same.

74. Based on the Interim Award and the information reasonably available to Zurich, there is no potential for coverage under the Zurich Policies for the damages set forth within the Interim Award, except for the damages awarded for Line 180, because these damages are not for "property damage" resulting from an "occurrence".

75. Therefore, the damages awarded because of the Line 180 crack and leak are the only damages because of "property damage" and the only damages potentially recoverable under any of the CGL Policies.

76. The CGL Policies' Coverage A and the Umbrella Policies' Coverages A and B also afford coverage only to "property damage" if: (1) the "property damage" is caused by an "occurrence" that takes place in the "coverage territory", (2) the "property damage" occurs during the policy period, and (3) no insured knew that the "property damage" had occurred prior to the policy period.

77. The Line 180 leak was detected on November 24, 2020 and repairs were made as of February 2021.

78. Policy No. GLO-1040244-06 was effective for the policy period of March 1, 2020 to March 1, 2021.

79. Therefore, based on the Interim Award and the information reasonably available to Zurich, there is no potential for coverage under any of the CGL Policies, except for Policy No. GLO-1040244-06, nor under the Umbrella Policies because no "property damage" occurred during those policy periods resulting from an "occurrence".

**COUNT II – DECLARATORY JUDGMENT**
**UNDERLYING EXHAUSTION**

80. Plaintiffs re-allege and incorporate paragraphs 1 through 79 as if fully set forth herein.

81. As outlined above, the Umbrella Policies' Coverage A affords follow form liability coverage with respect to five of the CGL Policies, upon exhaustion of the underlying CGL Policies.

82. The Umbrella Policies' Coverage A affords coverage of "damages covered by this insurance in excess of the total applicable limits of underlying insurance."

83. Specifically, the Umbrella Policies' Coverage A further provides that "if underlying insurance does not apply to damages, for reasons other than exhaustion of applicable Limits of Insurance by payment of loss, then Coverage A does not apply to such damages."

84. As such, the Umbrella Policies' Coverage A requires that the underlying CGL Policies be exhausted for there to be any possibility of coverage.

85. As outlined above in COUNT I, there is no potential of coverage under the underlying Zurich and/or Steadfast CGL Policies because no "property damage" occurred during the policy periods underlying the umbrella policies issued by Zurich affiliated companies.

86. Therefore, there is no potential for Coverage A under the Umbrella Policies because the underlying insurance does not apply to the damages awarded to Geeding, such that the limits of insurance of the underlying insurance has not been exhausted.

**COUNT III – DECLARATORY JUDGMENT**
**POLICY EXCLUSIONS**

87. Plaintiffs re-allege and incorporate paragraphs 1 through 86 as if fully set forth herein.

88. As outlined above, the Interim Award awarded to Buckeye $1,431,514.52 for Line 180, which consists of the costs for excavation, repairs, contractor services, mechanical work, regulatory reporting, environmental remediation due to the spill of approximately 47 barrels of gasoline, engineering analysis, and other incident related expenses.

89. The damages awarded to Buckeye for Line 180 are excluded, in whole or in part, from coverage under Policy No. GLO-1040244-06 by one or more exclusions.

90. Exclusion B "Contractual Liability" in Policy No. GLO-1040244-06 provides that the insurance under Coverage A does not apply to "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

91. To the extent that any damages awarded to Buckeye are by reason of assumption of liability pursuant to the purchase orders ("POs") issued by Buckeye to Geeding, the Master Service Agreements ("MSAs"), or any other contract between the parties, coverage for such damages are barred, in whole or in part, by Exclusion B.

92. Exclusion J "Damage to Property" subparagraph (5) in Policy No. GLO-1040244-06 provides that the insurance under Coverage A does not apply to "property damage" to "that particular part of real property on which you or any contractors or subcontractors working directly

or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations."

93. As indicated herein, a portion of the $1,431,514.52 Interim Award awarded to Buckeye for Line 180 consists of the costs for environmental remediation due to the spill of approximately 47 barrels of gasoline onto the real property that Line 180 sits.

94. In the Interim Award, the Panel found that Line 180 leaked because Geeding's welder failed to achieve adequate penetration when welding the Repair Sleeve installed on Line 180.

95. Therefore, the damages awarded in connection with Line 180 are barred, in whole or in part, from coverage under Policy No. GLO-104024406 because the damages are for "property damage" to that particular part of real property on which Geeding or its contractors or subcontractors working directly or indirectly on Geeding's behalf are performing operations.

96. Exclusion J "Damage to Property" subparagraph (6) in Policy No. GLO-1040244-06 provides that the insurance under Coverage A does not apply to "property damage" to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."

97. As stated, the Arbitration Panel found that Line 180 leaked because Geeding's welder failed to achieve adequate penetration when welding the Repair Sleeve installed on Line 180.

98. Therefore, the damages awarded in connection with Line 180 are barred, in whole or in part, from coverage under Policy No. GLO-104024406 because the damages are for "property damage" to that particular part of any property that must be restored, repaired or replaced because Geeding's "work" was incorrectly performed on it.

99. Exclusion L "Damage to Your Work" contained in Policy No. GLO-1040244-06 provides that the insurance under Coverage A does not apply to "property damage" to "your work" arising out of it or any part of it and included in the "products completed operations hazard.

100. "Your work" is defined by Policy No. GLO-1040244-06 as "[w]ork or operations performed by you or on your behalf" and "materials, parts or equipment furnished in connection with such work or operations." "Your work" also includes "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" and "the providing or failure to provide warnings or instructions."

101. Again, as set forth in the Interim Award, the Panel found that Line 180 leaked because Geeding's welder failed to achieve adequate penetration when welding the Repair Sleeve installed on Line 180.

102. Therefore, the damages awarded in connection with Line 180 are barred, in whole or in part, from coverage under Policy No. GLO-104024406 because the damages are for "property damage" to Geeding's "work."

103. Exclusion F contained in Policy No. GLO-1040244-06 provides that insurance under Coverage A does not apply to "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

104. "Pollutants" is defined by Policy No. GLO-1040244-06 as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

105. It is undisputed that approximately 47 barrels of gasoline was released from the Line 180 leak.

106. Therefore, the damages awarded in connection with Line 180 are barred, in whole or in part, from coverage under Policy No. GLO-10402440 because they are for "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants."'

107. As such, the damages awarded to Buckeye for Line 180 are excluded, in whole or in part, from coverage under Policy No. GLO-1040244-06 by Exclusion B, Exclusion F, Exclusion J(5), Exclusion J(6), and/or Exclusion L.

108. Therefore, Zurich has no duty to indemnify all damages awarded to Buckeye for Line 180, which totals $1,431,514.52.

109. Similarly and in the alternative, the above referenced exclusions would also apply in the event "property damage" were found to exist at any of the other locations for which Geeding's allegedly defective sleeve repairs were proactively repaired or will be repaired by Buckeye.

**COUNT IV – DECLARATORY JUDGMENT**
**ATTORNEYS' FEES**

110. Plaintiffs re-allege and incorporate paragraphs 1 through 109 as if fully set forth herein.

111. As outlined above, the Interim Award acknowledges that the Panel is permitted to award attorney fees and that Buckeye is the prevailing party. The Interim Award states that the Panel will set a briefing schedule for an application of attorneys' fees and costs, and the Panel will decide the amount to be awarded in its Final Award.

112. The Supplementary Payments Section of the Commercial General Liability Form contained within Policy No. GLO-1040244-06 provides that Zurich "will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend" "All court costs taxed

against the insured in the "suit". However, these payments do not include attorneys fees or attorneys expenses taxed against the insured."

113. Exclusion B contained in Policy No. GLO-1040244-06 provides that insurance under Coverage A does not apply to "property damage" for which Geeding is obligated to pay damages by reason of the assumption of liability in a contract or agreement and no exception to this exclusion is met in this case.

114. The Interim Award indicates that Buckeye, as the prevailing party, will be awarded some amount of attorneys' fees in the Panels' Final Award.

115. Therefore, based on the Supplementary Payments Section and Exclusion B of the Commercial General Liability Form contained within Policy No. GLO-1040244-06, Zurich has no duty to indemnify any damages awarded to Buckeye for attorneys' fees.

WHEREFORE, Zurich American Insurance Company and American Guarantee Liability Insurance Company respectfully request this Court to declare the rights and obligations of the parties under the Zurich, AGLIC, and Steadfast-issued Policies, and to enter judgment in favor of Zurich, AGLIC, and Steadfast adjudging and declaring that neither Zurich nor AGLIC nor Steadfast owe coverage whatsoever for the Interim Award or any of the damages alleged therein, that neither Zurich nor AGLIC nor Steadfast have a duty to indemnify Geeding or Buckeye for any claims or damages arising from the Interim Award or damages alleged therein, and that Zurich, AGLIC, and Steadfast are entitled to such further relief as the Court deems just and proper under the circumstances.

Respectfully Submitted,

**WATTERS WOLF BUB HANSMANN, LLC**

/s/ *Timothy J. Wolf*
Timothy J. Wolf, #53099
Lucas J. Ude, #66288
600 Kellwood Parkway, Suite 120
Saint Louis, Missouri 63017
(636) 798-0570 - Telephone
(636) 798-0693 – Facsimile
***twolf@wwbhlaw.com***
***lude@wwbhlaw.com***
***Attorneys for Plaintiffs***